# IN THE SUPREME COURT OF TEXAS

════════════
No. 11-0367
════════════

CITY OF NORTH RICHLAND HILLS, TEXAS, PETITIONER,

v.

LAURA FRIEND, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE
ESTATE OF SARAH FRIEND, DECEASED AND LUTHER FRIEND, INDIVIDUALLY,
RESPONDENTS

═══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS
═══════════════════════════════════════════════════════

**Argued February 28, 2012**

JUSTICE LEHRMANN delivered the opinion of the Court.

In this interlocutory appeal of the denial of the City's plea to the jurisdiction, we are

presented with three questions concerning the application of the Texas Tort Claims Act: (1) whether

the election of remedies provisions in section 101.106 require dismissal of this suit; (2) whether the

Friends' claim is one for which the City's governmental immunity has been waived under section

101.021(2) of the Act; and (3) whether there were sufficient allegations of "conscious indifference

or reckless disregard for the safety of others" to satisfy section 101.055(2).  Because we hold, in

answer to the second question, that the City's immunity has not been waived for this sort of claim,

we do not reach the other two questions. We reverse the judgment of the court of appeals and render judgment for the City.

## I. Facts

Sarah Friend collapsed on July 14, 2004 while standing in line for the "Green Extreme" water slide at NRH$_2$O, a city-owned water park in North Richland Hills. City employees responded with oxygen masks and other airway equipment, but did not retrieve an Automatic External Defibrillator device (AED) from a storage closet elsewhere on the park grounds. As a result, Sarah did not receive defibrillation until twenty-one minutes after her initial collapse, when the city fire department arrived. She was rushed to the hospital but could not be revived, and she died shortly after noon that day. The Friends allege that had the city employees used the AED on Sarah immediately, prior to using the airway equipment, the device would have saved her life.[1]

Friend's estate sued several defendants, including the City and some of its employees, claiming that their gross negligence in failing to retrieve and use the AED caused Sarah's untimely death. Pursuant to section 101.106(e) of the Texas Tort Claims Act, the trial court dismissed the employees. *See* TEX. CIV. PRAC. & REM. CODE § 101.106(e) (providing for dismissal of the employees on the government's motion when a governmental unit and its employees are both sued). Then, after obtaining the dismissal of the employees, the City also sought its own dismissal on three alternative grounds.

---

[1] Plaintiff's counsel explained at oral argument that the use of airway equipment alone during a cardiac episode was insufficient, since an open airway is of no use if the heart's normal rhythm has not been restored via defibrillation.

2

First, it invoked section 101.106(b) of the Tort Claims Act, which provides that filing suit against an employee forever bars suit against the governmental employer for the same conduct unless the government consents. *See id.* § 101.106(b). The City contends that when a plaintiff sues both a governmental unit and its employees, subsections 101.106(e) and (b) are both triggered and interact to require that both the employees and the governmental unit be dismissed.

Second, the City argued that the Friends' negligence claim does not fit within the narrow waiver of immunity provided by the Tort Claims Act. Sections 101.021 and 101.022 allow suits against governmental units only in cases involving the operation or use of motor vehicles, § 101.021(1), premises liability, § 101.022, or the "condition or use of tangible personal . . . property," § 101.021(2). The City contended that none of those categories applied to this case.

Finally, the City argued that even if this were the type of claim that might circumvent governmental immunity, the Friends did not sufficiently plead conscious indifference, as required by section 101.055 of the Tort Claims Act. That provision limits the Act's waiver of immunity, in emergency situations, to cases involving "conscious indifference or reckless disregard for the safety of others." *Id.* § 101.055(2).

The trial court denied the City's plea to the jurisdiction, and the court of appeals affirmed. 337 S.W.3d 387. The court of appeals reasoned that the bar in section 101.106(b) does not apply if the Friends have pled a waiver of the City's immunity. *Id.* at 392. Then, the court held that the Friends' claims did fall within section 101.021(2)'s waiver because it presented the lack of an "integral safety component." *Id.* at 395. Section 101.021 has been interpreted to permit a plaintiff to rely on the "condition or use of tangible personal property" waiver provision if the plaintiff alleges

3

that the governmental unit used property that lacked an integral safety component. *See Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 300 (Tex. 1976). The court of appeals also found sufficient allegations of conscious indifference to overcome section 101.055. 337 S.W.3d at 397. It remanded the case to the trial court, and this petition for review followed. We hold that the City's immunity was not waived by section 101.021. Accordingly, we reverse the court of appeals' judgment and render judgment dismissing the Friends' claims against the City.

## II. Waiver of Immunity

The court of appeals determined that the Friends had alleged sufficient facts to implicate the waiver of the City's immunity found in section 101.021(2) of the Tort Claims Act. That provision states:

A governmental unit in the state is liable for:

. . .

(2) personal injury or death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. § 101.021. This provision has led to vigorous debate over the proper parameters of the waiver, prompted numerous calls for legislative intervention and clarification, and spawned a host of cases exploring the outer bounds of this "use" exception to governmental immunity. Among the interpretive glosses on the statute is the rule, first articulated in *Lowe v. Texas Tech University*, that the provision by the state of personal property lacking an "integral safety

4

component"[2] constitutes a condition or use under section 101.021(2). 540 S.W.2d at 300. Despite rejecting the Friends' other arguments that their suit alleges a use or condition of property, the court of appeals was satisfied that the Friends had alleged a viable integral safety component theory. We disagree.[3]

It is well settled that mere nonuse of property does not suffice to invoke section 101.021(2)'s waiver. *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994). If it did, governmental immunity "would be rendered a nullity," because "[i]t is difficult to imagine a tort case which does not involve the use, or nonuse, of some item of real or personal property." *Kerrville State Hosp.*, 923 S.W.2d at 586 (internal quotation marks omitted). But in some cases we have held that, when a plaintiff alleges that property used by the state lacks an integral safety component, immunity is waived under section 101.021(2). *Lowe*, 540 S.W.2d at 300; *see also Robinson v. Cent. Tex. MHMR Ctr.*, 780 S.W.2d 169, 171 (Tex. 1989).

In *Lowe*, the plaintiff complained of the failure by Texas Tech University to give him a knee brace with his football uniform. 540 S.W.2d at 298. We reasoned that because a knee brace was, in light of Lowe's previous knee injury, an integral part of his football uniform, the failure to furnish it constituted a condition or use of property sufficient to invoke section 101.021(2). *Id.* at 300. Following this precedent, we held in *Robinson* that the provision of swimming gear to an epileptic patient without a life preserver also established waiver. 780 S.W.2d at 171.

---

[2] Though the rule was first described in *Lowe*, the term "integral safety component" was not coined until our opinion in *Kerrville State Hospital v. Clark*. 923 S.W.2d 582, 585 (Tex. 1996).

[3] The Friends did not file a petition for review with this Court challenging the rejection of their other theories for recovery, so the only question before us is whether they have stated an integral safety component theory.

But our recent holdings have limited the precedential value of those two cases. In *Kerrville State Hospital*, we described these cases as representing "the outer bounds of what we have defined as use of tangible personal property." 923 S.W.2d at 585. "The precedential value of these cases is therefore limited to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff's injuries." *Id.* In *Bishop*, we further limited the integral safety component doctrine to cases where a safety component is completely lacking, as opposed to merely inadequate. *Tex. A&M Univ. v. Bishop*, 156 S.W.3d 580, 584 (Tex. 2005).

Nevertheless, the Friends rely on *Lowe* and *Robinson* to contend that their claims fall within section 101.021(2)'s waiver, because they alleged that the City used emergency equipment but omitted an integral component of that equipment, the AED. Such a formulation threatens to eviscerate any limiting principle on "condition or use" entirely. It would enable plaintiffs, through artful pleading, to enlarge the scope of the waiver provided by section 101.021(2) by alleging that a governmental actor failed to use one particular type of equipment among a broadly defined class of property that may have been employed. Despite our binding precedent that forbids claims for nonuse, plaintiffs could circumvent immunity simply by alleging that property that was not used is linked, albeit indirectly, to property that was used—and used properly. More troubling, this expansion of the integral safety component theory would create a disincentive for governmental units to provide any form of health or safety equipment at their establishments. Counsel for the Friends acknowledged at oral argument that the Friends' theory would, paradoxically, fail if the City had stood by and watched Sarah die rather than attempt to use the oxygen mask and other airway

6

equipment. The Legislature could not have intended such a perverse disincentive when it enacted section 101.021.

The Friends have not stated an integral safety component theory sufficient to waive the City's immunity. The Legislature intended governmental units to be liable for negligently using harmful property, but not for failing to use it. *Kassen*, 887 S.W.2d at 14.

### III. Conclusion

The doctrine of governmental immunity protects the public fisc by prohibiting suits against governmental units (or their employees acting within the scope of their employment) except in narrow circumstances prescribed by statute. When a suit fails to allege facts sufficient to implicate a waiver of that immunity, the suit is barred. In this case, the Friends essentially allege no more than a failure to use an AED, which does not fall within the waiver of immunity in section 101.021(2) of the Tort Claims Act. The trial court should have dismissed the case. Accordingly, we reverse the judgment of the court of appeals, and render judgment dismissing the Friends' claims.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** June 29, 2012

7