

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00077-CV

**THE CITY OF SAN ANTONIO**,
Appellant

v.

Suzanne L. **SMITH** and Claudia Acevedo,
Appellees

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CI19949 2018CI22682
Honorable Larry Noll, Judge Presiding

Opinion by:      Sandee Bryan Marion, Chief Justice

Sitting:         Sandee Bryan Marion, Chief Justice
                 Rebeca C. Martinez, Justice
                 Irene Rios, Justice

Delivered and Filed: November 25, 2020

REVERSED AND RENDERED

The City of San Antonio ("City") appeals from an order denying its plea to the jurisdiction seeking dismissal of a personal injury lawsuit brought against it by appellees Suzanne L. Smith and Claudia Acevedo (collectively, "Appellees"). We reverse the trial court's order and render judgment dismissing Appellees' lawsuit for lack of jurisdiction.

## BACKGROUND

At approximately 3:00 am the morning of September 30, 2017, two paramedics with the San Antonio Fire Department responded to a 911 call at an apartment complex near Fredericksburg

Road. The call was a "Code 3," indicating an emergency warranting the use of the ambulance's lights and siren while in transit. Michael Miller, the paramedic who drove the ambulance, parked it in an alley behind the apartment complex to reduce the likelihood of it being struck by passing vehicles. He left the ambulance's emergency lights on to warn passersby of its presence, and left it idling so that the lights would not drain the vehicle's battery. Miller and the second paramedic, John Tamez, left the ambulance unlocked so that they could make a swift departure in the event they needed to quickly transport a critical patient. Neither Miller nor Tamez had heard of an idling ambulance being stolen while the paramedics attended to a patient, and neither thought anything about the location in which they left the ambulance indicated a risk of such a theft.

Miller and Tamez proceeded to a second-story apartment, where they assessed the condition of the patient and determined that he could safely be transported to the hospital by taxi rather than by ambulance. While they were preparing a taxi voucher, they heard "chatter" on their radio concerning their ambulance and received a call from dispatch asking where they were. Apparently the vehicle's GPS system had alerted dispatch that it was on the move, but the paramedics had not reported that they had left the scene of the call. The two then discovered that the ambulance was missing. They later learned that an unknown person had stolen the ambulance and driven it at a high rate of speed down Fredericksburg Road, where it collided with two cars, one occupied by Suzanne Smith and the other occupied by Claudia Acevedo. Both were injured.

Smith filed suit against the City, alleging that its immunity was waived under the Texas Tort Claims Act ("TTCA") because her injuries arose from the operation or use of a motor vehicle or were caused by a condition or use of tangible personal property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. Smith alleged that the City was negligent in allowing the ambulance to be left unattended and running, in violation of section 545.404 of the Texas Transportation Code, and

in failing to use an anti-theft device that would have prevented the theft of a vehicle left unattended and running.

Acevedo filed a separate suit against the City and two other defendants, but later nonsuited all but the City. Acevedo alleged in an amended petition that the City's immunity was waived because her injuries arose from the operation or use of a motor vehicle. She did not assert the "condition or use of tangible personal property" waiver of immunity or otherwise raise the failure to use an anti-theft device. Smith's and Acevedo's lawsuits were ultimately consolidated into one action.

The City filed a plea to the jurisdiction in which it asserted that (1) an emergency exception in the TTCA overrides any waiver of immunity; (2) Appellees' claims do not fall within the "operation or use of a motor vehicle" waiver of immunity because no City employee was operating or using the ambulance at the time of the accident; (3) neither the City nor the paramedics were a proximate cause of the accident; (4) there is no waiver of the City's immunity because the paramedics are shielded by official immunity; and (5) Appellees' claims do not fall within the "condition or use of tangible personal property" waiver of immunity because Appellees allege only nonuse of property.

Appellees filed a joint response to the plea to the jurisdiction, in which they asserted that (1) the emergency exception on which the City relies does not apply because the paramedics violated a traffic law by leaving the ambulance running and unattended, and because they acted recklessly or with conscious indifference; (2) the "operation or use of a motor vehicle" waiver applies because the paramedics left the ambulance running; (3) the City's failure to equip the ambulance with a specific anti-theft device, and the paramedics' decision to leave the ambulance running and unlocked, were proximate causes of the accident; (4) the paramedics do not have official immunity because they acted recklessly and with conscious indifference; and (5) the "use

or condition of tangible personal property" waiver applies because the ambulance lacked an integral safety component.

Appellees' response was accompanied by exhibits including an affidavit from Robyn McKinley, a firefighter and paramedic in Memphis, Tennessee, who Smith designated as an expert, and the depositions of Miller and Tamez.[1] McKinley, in her affidavit, and Appellees, in their questioning of Miller and Tamez, specifically advocated for the use of an anti-theft device manufactured by a company called Tremco. This device apparently is designed to make it difficult to put a vehicle into gear even though the vehicle has been left running.

The trial court denied the plea to the jurisdiction by written order dated January 24, 2020.

### ISSUES

The City raises five issues on appeal, asserting that the trial court erred by denying its plea to the jurisdiction because (1) the "operation or use of a motor vehicle" waiver of immunity does not apply; (2) the "condition or use of tangible personal property" waiver of immunity does not apply; (3) two statutory emergency exceptions do apply; (4) the City, if it were a private citizen, would not be liable at common law; and (5) the paramedics have official immunity, which preserves the City's immunity.

### STANDARD OF REVIEW

"[S]ubject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553 (Tex. 2000). Whether a court has subject matter jurisdiction is a question of law and is, therefore, subject to *de novo* review. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a plea to the jurisdiction challenges the pleadings, the reviewing court determines whether the plaintiff has alleged facts affirmatively

---

[1] The City filed objections to Appellees' evidence which were denied by the trial court.

demonstrating the court's jurisdiction. *Miranda*, 133 S.W.3d at 226; *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). The court construes the pleadings liberally in favor of the plaintiff and looks to the plaintiff's intent. *Miranda*, 133 S.W.3d at 226.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, the reviewing court considers relevant evidence submitted by the parties to resolve the jurisdictional issues. *Id.* at 227. "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 227-28. The applicable standard generally mirrors that of a summary judgment, so that the court indulges every reasonable inference and resolves any doubts in the nonmovant's favor. *Id.* at 228.

**DISCUSSION**

### *Waiver of immunity generally*

Immunity from suit bars an action against a governmental entity unless the entity has expressly consented to the suit, either by statute or express legislative permission. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999); *see Lubbock Cty. Water Control & Imp. Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300 (Tex. 2014) (recognizing governmental immunity of local governmental entities). It is the plaintiff's burden to establish such consent. *Jones*, 8 S.W.3d at 638.

A municipality is afforded governmental immunity for actions arising out of the performance of its governmental functions, absent a clear and unambiguous legislative waiver of immunity. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 62 (Tex. 2019); *see Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 146 (Tex. 2018). The TTCA contains a non-exclusive list of functions that are deemed to be governmental, and provides a waiver of immunity for certain

tort claims arising out of the performance of such functions. TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, 101.0215; *see Wasson*, 559 S.W.3d at 147. Section 101.0215 specifically identifies "operation of emergency ambulance service" as a governmental function for which a municipality has governmental immunity, unless waived. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(18). And section 101.021 identifies the circumstances in which that immunity is waived. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. As applicable to this case, those waivers are the "operation or use of a motor vehicle" waiver and the "use or condition of tangible personal property" waiver. Appellees asserted both in their joint response to the City's plea to the jurisdiction.

*"Operation or use of a motor vehicle" waiver*

The TTCA first provides that a governmental unit is liable for

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

    (A)   the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

    (B)   the employee would be personally liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1).

The City asserts in its first issue on appeal that this waiver does not apply because Appellees' injuries did not arise from the operation or use of the ambulance by a City employee. *See Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 927 (Tex. 2015) ("a government employee must have been actively operating the vehicle at the time of the incident"). Rather, it is undisputed that the ambulance was being operated and used at the time of the accident by a thief.

Although Appellees asserted the "operation or use of a motor vehicle" waiver in the court below, they do not pursue that theory on appeal. In fact, they affirmatively state:

- "neither Miller nor Tamez was *operating* the vehicle";

- "a stationary, unattended ambulance would not constitute a waiver of immunity under TTCA 101.021(1) – 'operation or use of a motor-driven vehicle'"; and

- Miller and Tamez could not have been held to be *operating* the ambulance for purposes of waiver in TTCA §101.021(1) at the time it was stolen.

(All emphasis by Appellees.)

Appellees have conceded on appeal that subject matter jurisdiction cannot be supported under section 101.021(1), and we agree. Accordingly, the City's first issue is sustained without further discussion. The question remains, though, whether jurisdiction is supported under section 101.021(2).

*"Use or condition of tangible personal property" waiver*

The TTCA also provides that a governmental unit is liable for

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2).

In its second issue, the City contends that this waiver does not apply because Appellees' injuries were not caused by a condition or use of tangible personal property. If the property at issue is considered to be the ambulance, it is undisputed that a thief, rather than the City, was using the property at the time of the accident causing Appellees' injuries. That fact is not altered by assigning any fault to the City for the thief's ability to steal the ambulance. "[A] governmental unit does not 'use' personal property merely by allowing someone else to use it." *Tex. Dep't of Criminal Justice v. Rangel*, 595 S.W.3d 198, 206 (Tex. 2020) (internal quotation marks omitted). If the City does not "use" property by allowing another to use it with permission, logic dictates that it also does

not "use" property when another uses it without permission. Under the undisputed facts of this case, the City did not "use" the ambulance at the time Appellees were injured.

It is possible to read Appellees' pleadings as alleging that their injuries were caused by a condition of the ambulance—the fact that it was left unlocked. *See Miranda*, 133 S.W.3d at 226 (directing courts to construe plaintiff's pleadings liberally). However, the "condition" of being unlocked is nothing more than the nonuse of locks, an issue to which we now turn.

"It is well-settled that mere nonuse of property does not suffice to invoke section 101.021(2)'s waiver" of immunity. *City of N. Richland Hills v. Friend*, 370 S.W.3d 369, 372 (Tex. 2012). The City argues that Appellees allege only a classic case of nonuse—the failure to equip the ambulance with a particular anti-theft device.[2] Appellees respond that the section 101.021(2) waiver does apply because the City provided property—the ambulance—that lacked an integral safety component—a specific anti-theft device. As Appellees rely on *Lowe v. Texas Tech University*, 540 S.W.2d 297 (Tex. 1976), and *Robinson v. Central Texas MHMR Center*, 780 S.W.2d 169 (Tex. 1989), for this argument, we will briefly address each of those cases.

The plaintiff in *Lowe* sustained a knee injury during a football game and subsequently sued Texas Tech University, alleging a negligent failure to provide proper protective gear (*i.e.*, a knee brace) as part of his uniform. *Lowe*, 540 S.W.2d at 298. The supreme court held that that allegation brought Lowe's case "within the statutory waiver of immunity arising from some condition or some use of personal property." *Id.* at 300.

The plaintiff in *Robinson* alleged that a patient who was known to suffer from epileptic seizures drowned because MHMR employees, who were responsible for seeing that the patient was dressed in appropriate swimming attire, did not provide him with a life preserver. *Robinson*,

---

[2] In this analysis, the relevant personal property is the anti-theft device rather than the ambulance itself.

780 S.W.2d at 169. The supreme court concluded that "[a] life preserver was just as much a part of Robinson's swimming attire as the knee brace was part of the uniform in *Lowe*." *Id.* at 171. It held that the allegation of liability based on the failure to provide a life preserver brought the claim within the "use or condition of personal property" waiver of immunity. *Id.*

In a later case, however, the supreme court explained the limitations of *Lowe* and *Robinson*:

> These cases represent perhaps the outer bounds of what we have defined as use of tangible personal property. We did not intend, in deciding these cases, to allow both use and non-use of property to result in waiver of immunity under the Act. Such a result would be tantamount to abolishing governmental immunity, contrary to the limited waiver the Legislature clearly intended. The precedential value of these cases is therefore limited to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff's injuries.

*Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex. 1996).

The plaintiffs in *Clark* did not allege that the hospital provided property lacking an integral safety component. Rather, they alleged that the treatment the hospital provided was not as effective as another treatment would have been. *Id.* at 585. The court rejected the application of *Lowe* and *Robinson* based on this factual distinction:

> For *Lowe* to apply to the Clarks' claims, we must assume that the university would have waived its immunity even if it had provided Lowe with a knee brace as long as Lowe could show that another type of knee brace would have better protected him. Likewise, for *Robinson* to apply, we must assume that MHMR would have waived its sovereign immunity even if it had provided Robinson a life preserver if Robinson could show that MHMR should have provided him with a better one. Thus, the facts of this case are different than those in *Lowe* and *Robinson*.

*Id.* In a subsequent case, the court emphasized that *Lowe* and *Robinson* apply "only when an integral safety component is entirely lacking rather than merely inadequate." *Tex. A&M Univ. v. Bishop*, 156 S.W.3d 580, 584 (Tex. 2005).

More recently, in *Friend*, the supreme court reversed the denial of a plea to the jurisdiction in a case in which the plaintiffs asserted the lack of an integral safety component theory. *Friend*,

370 S.W.3d at 370. Friend collapsed at a city-owned water park. City employees treated her with oxygen masks and other airway equipment, but did not retrieve an Automatic External Defibrillator device (AED) from a storage closet in another part of the park. *Id.* As a result, Friend did not receive defibrillation until the fire department arrived some twenty-one minutes later. *Id.* She was taken to the hospital where she later died. *Id.*

Plaintiffs sued the city, alleging that their claim fell within the "condition or use of personal property" waiver because the city "used emergency equipment but omitted an integral component of that equipment, the AED." *Id.* at 372-73. The supreme court disagreed:

> Such a formulation threatens to eviscerate any limiting principle on "condition or use" entirely. It would enable plaintiffs, through artful pleading, to enlarge the scope of the waiver provided by section 101.021(2) by alleging that a governmental actor failed to use one particular type of equipment among a broadly defined class of property that may have been employed.

*Id.* at 373. The court concluded that plaintiffs "essentially allege no more than a failure to use an AED, which does not fall within the waiver of immunity in section 101.021(2) of the Tort Claims Act." *Id.*

In the present case, Appellees allege that the ambulance was not equipped with a specific anti-theft device that may have prevented it from being stolen even though it was left running. They argue that the City thus used or provided property (the ambulance) that lacked an integral safety feature (a particular anti-theft device), thus bringing their claims within the "use or condition of personal property" waiver pursuant to *Lowe* and *Robinson*. The City counters that Appellees' claims do not fall within that waiver because the ambulance *was* equipped with anti-theft devices—door locks and an alarm—and Appellees' contention that it should also have been equipped with a different device is not cognizable under the integral safety component theory. *See Bishop*, 156 S.W.3d at 584 (theory applies "only when an integral safety component is entirely lacking rather than merely inadequate"). We agree with the City.

Appellees' argument, like that made in *Friend*, is that the City failed to use a particular type of equipment among a broadly defined class of property—anti-theft devices—that may have been employed. *See Friend*, 370 S.W.3d at 373. It is also like the argument made in *Clark* in that Appellees essentially urge that the particular anti-theft device with which they believe the ambulance should have been equipped would have been more effective in preventing theft than the locks and alarm with which the ambulance actually was equipped.[3] *See Clark*, 923 S.W.3d at 585. In short, the assertion is not that an integral safety component was entirely lacking, but rather that it was inadequate.[4] This is insufficient to bring the case within the narrow parameters of *Lowe* and *Robinson*. *See Bishop*, 156 S.W.3d at 584.

Because the integral safety component theory does not apply to this case, Appellees "essentially allege no more than a failure to use [a particular anti-theft device], which does not fall within the waiver of immunity in section 101.021(2) of the Tort Claims Act." *Friend*, 370 S.W.3d at 373; *see Clark*, 923 S.W.2d at 585 (failure to use different drug is nonuse of property that does not fall within waiver of immunity).

The City's second issue on appeal is sustained. Because our resolution of issues one and two is dispositive of this appeal, we need not address the City's remaining issues.

### CONCLUSION

The undisputed facts establish that Appellees' claims against the City do not fall within either waiver of governmental immunity provided by section 101.021 of the TTCA. As a result, the City retains immunity and the trial court lacks subject matter jurisdiction over Appellees'

---

[3] Insofar as Appellees challenge the City's decision not to equip its ambulances with the particular anti-theft device they favor, which they contend is a safety feature, we note that "decisions about installing safety features are discretionary decisions for which the [City] may not be sued." *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002).

[4] Indeed, Appellees' analysis of the section 101.021(2) issue on appeal depends in large part on their assertion that the paramedics were negligent or reckless in leaving the ambulance unlocked, *i.e.*, failing to use the anti-theft device with which the ambulance was equipped.

claims. We reverse the order denying the City's plea to the jurisdiction and render judgment dismissing Appellees' lawsuit for lack of jurisdiction.

Sandee Bryan Marion, Chief Justice